Filed 4/23/26  In re F.M. CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

| | |
|---|---|
| In re F.M., a Person Coming Under the Juvenile Court Law. | C103992 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>E.M. et al.,<br><br>        Defendants and Appellants. | (Super. Ct. No. 23JV3275401) |

S.A. (father) and E.M. (mother) separately appeal the juvenile court's orders terminating their parental rights as to F.M. (the minor).  They contend the juvenile court erred in finding that the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related state law (Welf. & Inst. Code, § 224.2) did not apply.[1]  Specifically, father argues the Shasta County Health and Human Services Agency (Agency) failed to satisfy its duty of further inquiry into the minor's possible Native American heritage under section 224.2, subdivision (e), and mother joins in the argument.

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

We agree the Agency's further inquiry under section 224.2 was inadequate. We will conditionally reverse the orders terminating parental rights and remand for further ICWA proceedings.

BACKGROUND

Mother and father are the parents of the minor.[2] In December 2023, the Agency filed a dependency petition on behalf of the then three-month-old minor based on failure to protect (§ 300, subd. (b)(1)) and abuse of a sibling (§ 300, subd. (j)). The petition alleged the minor was at risk of harm in the parents' custody due to their prior child welfare histories of abuse, father's unsanitary and hazardous home conditions, father's untreated mental health disorders, and mother's aggressive conduct toward the social workers.

Mother was hostile and refused to speak to the social worker about ICWA during several home visits. In his prior dependency cases, father reported Cherokee ancestry. While the Agency's ICWA inquiry in the present case remained ongoing, the petition stated there was "no reason to believe" the minor was or may be an Indian child.

According to the detention report, mother said her mother (maternal grandmother) told her she was Blackfoot, Aztec, and Mayan, although she was unsure if this was true because maternal grandmother had lied to her before. Mother's past case history indicated no Native American ancestry. Father reported some Native American ancestry, and in the 2022 dependency case he had identified possible ancestry with the United

---

[2] Mother has an older child from a previous relationship who was placed out of mother's care with his grandmother in a voluntary dependency case in Humboldt County based on physical abuse and domestic violence. Father is married to G.A. (stepmother) and they share three children together (the paternal half-siblings). The paternal half-siblings were the subject of a separate dependency proceeding (the 2022 dependency case) based on father's and stepmother's untreated mental health problems and their unsanitary home conditions. Father's parental rights to two other children, W. and G., were previously terminated in separate dependency proceedings in Tehama and Humboldt Counties.

2

Keetoowah Band of Cherokee Indians, Eastern Band of Cherokee Indians, and Cherokee Nation. The ICWA inquiry in the 2022 dependency case was pending.

The juvenile court conducted a detention hearing in December 2023. Mother testified that any possible Native American ancestry was on father's side and said she did not know how to get the information. Father confirmed he had Native American ancestry, but said he did not "know if it is enough to make a difference;" he said the only person who might know was his "mom's mother" (paternal great grandmother) who was deceased. Father said that during a prior dependency case in Humboldt County involving one of the three paternal half-siblings it was mentioned he may have ancestry with three different tribes of the Cherokee Nation, one being Kichwa. Father said it was difficult to get information from the tribes. The juvenile court provided father with the ICWA-030 Notice of Child Custody Proceeding for Indian Child form to complete. But father and mother each executed ICWA-020 Parental Notification of Indian Status forms stating they had no Native American ancestry.

Following the hearing, the juvenile court detained the minor and set a combined jurisdiction and disposition hearing for February 2024. Neither mother nor father identified any relatives to assess for placement.

A January 2024 jurisdiction report recommended that the juvenile court declare the minor a dependent child and continue her in foster care. ICWA verification remained pending. The Agency attached several dependency reports and documents from the 2022 dependency case. The reports indicated that the Agency had sent six relative notification letters and the juvenile court had found that ICWA did not apply to the minor's paternal half-siblings.

The Agency's disposition report contained no new ICWA information and noted ICWA verification remained pending. The Agency continued to search for the minor's relatives.

In February 2024, the juvenile court held a combined jurisdiction and disposition hearing and asked the parents about Native American ancestry. Mother said she was told she had a sixteenth percent of Cherokee Indian ancestry, but she was not sure if it was true. She said, "[t]he people that I know of are no longer living." Father claimed "[t]here was not enough efficiency from the tribes to go with." The juvenile court found there was no reason to believe the minor was an Indian child but asked both parents to notify the juvenile court and the Agency if they discovered any new information. The juvenile court set a contested jurisdiction and disposition hearing for March 2024.

The Agency subsequently filed an ICWA addendum report that described its ICWA inquiry efforts and recommended the juvenile court find ICWA did not apply. According to the report, in January 2024, the Agency sent relative notification letters to 13 maternal and paternal relatives. Three letters were returned to sender. A search of mother and father's child welfare histories revealed no relevant ICWA history for mother and a February 2024 finding in father's 2022 dependency case that ICWA did not apply. That same day, the social worker called two relatives for whom she had phone numbers; she left a voicemail message for one and spoke with the other who said it was her husband's side of the family and that she did not know anyone else to contact for information. On March 20, 2024, the social worker sent ICWA inquiry letters to eight relatives. That same month, the Agency also sent letters to the Bureau of Indian Affairs (BIA), the Blackfeet Tribe of the Blackfeet Indian Reservation of Montana, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee Indians in Oklahoma, and e-mailed the Cherokee Nation asking whether the minor may be an Indian child with respect to each tribe. The Agency provided the names and dates of birth for the minor, mother, and father, and maternal grandmother's name and month and year of birth. No paternal relative information was included in the correspondence to the BIA or the tribes. The Cherokee Nation responded the next day via e-mail that the minor was

4

not an Indian child based on the information provided, but that any incorrect or omitted information could invalidate that determination.

At the contested jurisdiction and disposition hearing in March 2024, father submitted on the petition based on the Agency's reports, and the juvenile court and counsel accepted mother's offer of proof as to what she would say if called as a witness. During the hearing, the juvenile court inquired about ICWA. Mother said she did not know how to obtain any family information and claimed she tried to turn in the ICWA-030 form but was turned away. When the juvenile court told mother she needed to return it to the Agency, mother said the Agency would not fill the form out for her or tell her anything. After the juvenile court explained that mother needed to fill out the form with as much family information as she knew, mother responded, "I don't know of any information on that side. I don't know who is what. The only family members that I know of are Greek, Scottish, Irish, German, and Polish." Mother agreed to complete the ICWA-030 form if she found a source of familial information. Father said he could not provide any updated ICWA information because he had nobody to tell him anything.

The juvenile court adopted the Agency's proposed findings that it had made all efforts to obtain familial history, had contacted the parents and readily available relatives, and had submitted the information and notice to the appropriate tribes, the BIA, and Secretary of the Interior. Based on the Agency's inquiry efforts, the juvenile court found there was no reason to know or believe the minor was an Indian child and that ICWA did not apply.

The juvenile court sustained the petition, declared the minor a dependent child, continued her in foster care, and granted mother and father reunification services. The juvenile court granted father's request to take judicial notice of the 2022 dependency case files. Those dependency reports included the following additional ICWA-related information: (1) "[t]here is possible Yupik Alaskan Indian Tribe on the paternal side of the family. Yupik was sent notice when G. [father's alleged older child later freed for

adoption] was placed in protective custody on 7/24/18;" (2) father previously reported "Cherokee, [Sioux], and Blackfoot" heritage; (3) in July 2016 a juvenile court found ICWA did not apply in one of father's prior dependency cases; (4) September 2023 inquiry e-mails sent to three Cherokee tribes in the 2022 dependency case included the paternal grandfather's name (David M.) and paternal grandmother's name (Norma T.) and her date of birth; (5) each of the three Cherokee tribes responded that the paternal half-siblings were not Indian children as to those tribes; (6) the Agency's January 2024 ICWA inquiry letter to the BIA in the 2022 dependency case listed only the three Cherokee tribes and did not reference the Yupik, Sioux, or Blackfeet tribes father had previously identified; and (7) in February 2024, the juvenile court terminated reunification services in the 2022 dependency case and found that ICWA did not apply.

In April 2024, the Agency filed a subsequent petition (§ 342) adding allegations against stepmother. The attached ICWA-010 form said there was no reason to believe the minor was an Indian child.

During the initial hearing on the subsequent petition, mother and father offered no new ICWA information because they said they had no living relatives to provide information. Neither mother nor father returned the ICWA-030 form, and the juvenile court again requested the parents complete and return it. Father said he did not fill out the ICWA-030 form because the juvenile court already found ICWA did not apply in the 2022 dependency case. The juvenile court responded: "So keep in mind that if you identify additional information that could be helpful in making that determination or reexamining that determination, make sure you provide that to the [A]gency right away." Father agreed, although he did not expect anything to change. The juvenile court found there was no reason to believe ICWA applied, and set a combined jurisdiction and disposition hearing on the subsequent petition in June 2024.

In June 2024, the Agency filed an amended jurisdiction report that noted ICWA remained pending and asked the juvenile court to consider its prior ICWA addendum

report, which stated ICWA did not apply. The Agency attached documents from the 2022 dependency case.

The Agency's disposition report did not contain any new ICWA information and stated ICWA did not apply. The parents had not returned the ICWA-030 form.

At a June 2024 hearing on the subsequent petition, the juvenile court asked mother to complete and return the previously provided ICWA-030 form, explaining it was "just a family tree." According to the Agency's counsel, mother told the social worker the maternal grandmother may have Indian ancestry information, but mother did not provide the Agency with any contact information. Mother's counsel agreed to work with the Agency on the issue, and the juvenile court continued the hearing.

A July 2024 addendum stated that the ICWA inquiry remained pending and provided no new ICWA information.

The juvenile court conducted a combined jurisdiction and disposition hearing on the subsequent petition in July 2024. Mother said she had no living relatives to assist her in filling out the ICWA-030 form but agreed to let the Agency know if she learned any new familial information. The juvenile court noted its previous finding that ICWA did not apply, and said the Agency could engage in further family finding inquiries. The juvenile court sustained the subsequent petition, declared the minor a dependent child, and found ICWA was pending for further family finding efforts.

At an August 2024 hearing on mother's change order request for placement or overnight visitation, mother repeated that she had no living relatives to provide information for the ICWA-030 form. Mother said she did not know her grandparents' or great grandparents' last names. The juvenile court instructed mother and father to complete and return the ICWA-030 forms if they learned any relative information. The juvenile court found there was no reason to believe ICWA applied, although it noted ICWA was pending for family finding efforts. The juvenile court continued the matter.

7

In a second opposition to mother's request to change placement or visitation, the Agency stated the social worker would complete an ICWA-030 form with information about each parent and would provide it to their attorneys for review and verification. Once the parents reviewed and verified the information, the Agency would contact the identified registered tribes.

The juvenile court inquired about ICWA at the continued JV-180 hearing. Mother's counsel informed the juvenile court that mother was currently reviewing an ICWA-030 form that the social worker had prepared. Father initially said he did not have any family tree information to provide and denied knowing the names of any of his relatives; he then admitted that he knew the names of his mother and father and their dates of birth, and his grandmother's name, but said he knew nothing about his paternal relatives and did not know if his father was still alive. The juvenile court again instructed the Agency to provide father with the ICWA-030 form and ordered father to fill out his parents' names, dates of birth, and any other information he knew so the Agency could provide the information to the Cherokee tribes. The juvenile court found there was no reason to believe or know ICWA applied, and denied mother's request to change placement or for overnight visits.

In December 2024 the Agency recommended that the juvenile court terminate reunification services for mother, father, and stepmother and set a section 366.26 hearing. ICWA verification remained pending. A status review report noted that mother, father, and stepmother each reported Cherokee ancestry, but none had completed an ICWA-030 form. The Agency contacted the maternal grandmother, Laura M., who requested placement consideration, and maternal uncle, Timothy M., with whom the maternal grandmother lived. The maternal grandmother said "her family has Native American ancestry way back, but she does not know of any family member having a tribal enrollment number." After reviewing father's child welfare history, the social worker discovered the paternal grandmother's maiden name was Norma H. The Agency did not

8

locate any information showing the paternal grandmother was an enrolled member of a federally recognized tribe and noted there had been "a finding of No ICWA" in father's prior dependency matter.

A supplemental ICWA addendum report filed in January 2025 stated the minor did not meet the criteria for an Indian child. The report recounted the Agency's due diligence efforts during its ICWA inquiry, said the Agency had found no new information that required further inquiry, and emphasized the Agency had not received an ICWA-030 form from either parent. The report recommended the juvenile court maintain its prior finding that ICWA did not apply.

At a hearing in January 2025, mother said the maternal grandmother gave her some names for the ICWA-030 form, and she would return the form the following week. Father reiterated he had no living relatives to ask about familial information, and the juvenile court again encouraged him to complete the ICWA-030 form and submit it to the Agency. The juvenile court found the Agency had made all reasonable efforts to obtain familial information and that ICWA did not apply, although it noted that finding could change if further information was found and it asked the Agency to forward any updated ICWA-030 information it received from mother. The juvenile court terminated reunification services for mother, father, and stepmother, and set a section 366.26 hearing for May 2025.

In April 2025, the Agency filed a section 366.26 report and permanent plan review, recommending the juvenile court terminate parental rights and select adoption as the permanent plan. The report described the Agency's family finding efforts, which included conducting internet, Lexis Nexis, and True People searches for updated address and phone information for potential relatives. According to the report, the Agency mailed relative notification letters together with the Important Information for Relatives pamphlet, the JV-285 relative information form, the JV-287 confidential information form, and the ICWA "A Family's Guide" leaflet, to several potential family contacts and

9

relatives. It also reviewed maternal great uncle James S.'s obituary, and identified Ralph M. as a maternal great grandparent. The Agency did not report whether it sent any of the relative information to the BIA or to the four tribes it had previously contacted.

At the section 366.26 hearing in May 2025, the juvenile court inquired about ICWA. Mother had not returned the ICWA-030 form but said she had communicated with maternal grandmother, who was still waiting to hear from some family members about possible Native American ancestry. The juvenile court encouraged mother to provide any information she received as soon as possible. Father provided no new ICWA information. The juvenile court maintained its previous finding that ICWA did not apply and continued the section 366.36 hearing.

Mother and father attended the continued section 366.26 hearing in June 2025. Mother said she was still waiting for family information from maternal grandmother, and father said he had no new family information to provide. The juvenile court maintained its prior finding that ICWA does not apply. The juvenile court denied mother's request to reinstate services, found that the parental benefit exception to adoption did not apply, terminated parental rights, and selected adoption as the minor's permanent plan.

## APPLICABLE LAW

Congress enacted ICWA to protect the best interests of Indian children and to promote the stability and security of Native American tribes. (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1128-1129 (*Dezi C.*).) An " 'Indian child' " is an unmarried person under 18 years of age who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); accord § 224, sub. (a).) "ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes." (*Dezi C.,* at p. 1129.) The statute allows states to adopt laws providing higher standards of protection for the rights of parents of Indian children. (*Ibid.*)

"Under ICWA's state analogue statutes [the California Indian Child Welfare Act]… , courts and child welfare agencies are charged with 'an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child' in dependency cases.  (Welf. & Inst. Code, § 224.2, subd. (a).)" (*Dezi C., supra*, 16 Cal.5th at p. 1125; see § 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a).)[3]  "This 'duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.' " (*Dezi C.*, at p. 1132.)

When a child welfare agency "has 'reason to believe' that an Indian child is involved, further inquiry regarding the possible Indian status of the child is required.  (§ 224.2, subd. (e); see also rule 5.481(a)(4).)" (*Dezi C., supra*, 16 Cal.5th at p. 1132.) There is "reason to believe" when the juvenile court or agency has information suggesting that a child or parent is a member or citizen of a tribe or may be eligible for membership in a tribe.  (§ 224.2, subd. (e)(1).)

"Further inquiry includes, but is not limited to, all of the following:  [¶] (A) Interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.3.  [¶] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member or citizen, or eligible for membership or citizenship in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility.  [¶]  (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.  Contact

---

[3]  Undesignated rule references are to the California Rules of Court.

with a tribe shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices under the federal Indian Child Welfare Act of 1978 (25 U.S.C. Sec. 1901 et seq.)  Contact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or citizenship eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2)(A)-(C).)  A child welfare agency "does not discharge [its] duty of further inquiry until [it] make[s] a 'meaningful effort' to locate and interview extended family members . . . ." (*In re K.T.* (2022) 76 Cal.App.5th 732, 744.)  An " 'extended family member' " includes an adult who is the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see also § 224.1, subd. (c) [adopting ICWA definition of extended family member].)

If the further inquiry results in a reason to know the child is an Indian child, then formal notice under section 224.3 must be provided to the relevant tribes. (See § 224.2, subd. (d) [defining circumstance establishing a "reason to know" a child is an Indian child]; *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

If the juvenile court "makes a finding that proper and adequate further inquiry and due diligence as required in [section 224.2] have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding" that ICWA "does not apply to the proceedings … ."  Such a finding is "subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2).)  The juvenile court's "fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Dezi C., supra*, 16 Cal.5th at p. 1141.)

## DISCUSSION

Father and mother contend the juvenile court erred in finding that ICWA did not apply because the Agency failed to satisfy its duty of further inquiry under section 224.2,

12

subdivision (e). They acknowledge the Agency and the juvenile court inquired about Native American ancestry throughout the dependency proceedings but argue the Agency did not provide known relative information to the BIA and all identified the tribes. We agree.

The Agency argues father and mother are precluded from asserting their challenge because they did not raise it in the juvenile court. But as father correctly notes, the failure to object to ICWA inquiry or notice deficiencies in the trial court does not forfeit consideration of the issue on appeal. (See *In re D.W.* (2011) 193 Cal.App.4th 413, 417; *In re Marinna J.* (2001) 90 Cal.App.4th 731, 733.)

On the merits, the Agency concedes there was a reason to believe the minor was an Indian child. We agree. Both mother and father reported Cherokee ancestry. The record also shows that father identified possible Cherokee, Blackfoot, Yupik Alaskan Indian, and Sioux ancestry in his prior dependency cases, and at some point, mother also indicated possible Blackfoot ancestry. That was sufficient to require the Agency to undertake the further inquiry required by section 224.2, subdivision (e). (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 404; *In re D.S., supra*, 46 Cal.App.5th at p. 1052.)

The Agency did not contact all relevant tribes and provide known familial information to each of the tribes during the required inquiry. (§ 224.2, subd. (e)(2)(A)-(C).) In this case, nothing indicates the Agency contacted the Yupik Alaskan Indian or Sioux tribes even though it had information that father previously identified possible ancestry with those tribes. To the extent the Agency argues prior ICWA inquiries in 2014, 2016-2017, and 2018 in other dependency cases concluded that ICWA did not apply to father's other children, the record here does not show the basis for those determinations. (See *In re M.E.* (2022) 79 Cal.App.5th 73, 84 [the limited information provided to the juvenile court regarding a prior dependency action was insufficient for a finding that the department had complied with its ICWA inquiry duties].) And although

13

reports in the 2022 dependency case discussed potential ancestry with the three Cherokee tribes notified in this case, they did not address father's possible Yupik or Sioux heritage.

In its correspondence in this case with the BIA, the Blackfeet tribe, and the three Cherokee tribes, the Agency did not include information regarding father's paternal relatives, even though it had contact with, or had information about, several paternal relatives, including the paternal grandfather and paternal grandmother. In addition, the Agency's letters to the tribes did not include maternal great grandparent Ralph M. We also note that in August 2024, the Agency informed the juvenile court that it would prepare ICWA-030 forms and have mother and father verify the information before sending it to identified tribes. Mother's counsel subsequently said that mother was reviewing the form for accuracy. But the form is not in the record, and nothing shows the Agency sent the form to the tribes.

The Agency did not conduct an adequate further inquiry when it omitted known direct lineal information for several paternal and maternal relatives in its correspondence to the Blackfeet and Cherokee tribes, and did not contact the Yupik and Sioux tribes. Given this conclusion, we need not address father's additional arguments that the Agency fell short in other ways.

DISPOSITION

The juvenile court's orders terminating parental rights are conditionally reversed, and the matter is remanded for the limited purpose of complying with the inquiry and notice provisions of ICWA, as well as the requirements of sections 224.2 and 224.3 and the documentation provisions of California Rules of Court, rule 5.481(a)(5). If the juvenile court finds that further inquiry is proper and adequate, due diligence has been conducted, and ICWA does not apply, the orders terminating parental rights shall be reinstated. If, however, the juvenile court concludes that ICWA applies, the juvenile court is ordered to conduct a new

14

section 366.26 hearing and proceed in accordance with ICWA and California implementing provisions.

/S/
———————————————————
MAURO, J.

We concur:

/S/
———————————————————
EARL, P. J.

/S/
———————————————————
KRAUSE, J.